IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:    DARRYL W. BRICE and                       Case No. 11-36393-KRH
              TRACEY R. BRICE,                               Chapter 13
                  Debtors.

**MEMORANDUM OPINION**

Before the Court is the objection (the "Objection") of the Chapter 13 Trustee, Carl M. Bates (the "Trustee"), to the Modified Chapter 13 Plan (the "Modified Plan") of Darryl and Tracey Brice (the "Debtors"). The Objection asks the Court to determine whether the Debtors are entitled to modify their confirmed Chapter 13 plan in this case due to an agreed modification to the rights of a holder of a claim secured by a first priority deed of trust lien encumbering the Debtors' primary residence (the Debtors' "Home"). The Court finds that the loan modification represents a substantial, unanticipated change in the overall financial condition of the Debtors that justifies the Modified Plan. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[1]

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (L), and (O), in which final orders or judgments may be entered by a bankruptcy judge. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

The Debtors filed a voluntary petition (the "Petition") under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on October 10, 2011 (the "Petition Date"). The Debtors filed along with their Petition the requisite Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income utilizing the Official Form 22C ("Form B22C"). Fed. R. Bankr. P. 1007(b)(6). On October 11, 2011, the Debtors filed their original Chapter 13 plan (the "Original Plan") with the Court. Fed. R. Bankr. P. 3015(b). Although the Debtors' annualized current monthly income[2] is less than the median income for a family of the Debtors' size in Virginia,[3] the Debtors' Original Plan, nevertheless, provided for equal monthly installment payments to the Trustee over a period of five years.[4] The Original Plan provided for the cure of an arrearage that had accrued prior to the Petition Date on the loan that was secured by the deed of trust lien on the Debtors' Home in accordance with § 1322(b)(5). The Original Plan also provided for the payment of a dividend to the Debtors' unsecured creditors of 10%. The Original Plan was confirmed on December 15, 2011, without objection.

On June 12, 2012, The Bank of New York Mellon as Trustee for the certificate holders of the CWABS, Inc., asset-backed certificates, series 2007-2 (the "Bank of New York") filed a motion for relief from the automatic stay in which the Bank of New York alleged that, in its capacity as Trustee, it was the holder of a note made by Debtor Tracey Brice together with her

---

[2] The term "current monthly income" is defined in § 101(10A) of the Bankruptcy Code. It is "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period" prior to the petition date. 11 U.S.C. § 101(10A)(A). The "annualized current monthly income" of a debtor is derived by multiplying "current monthly income" by a factor of 12. *See* line 15 of Form B22C and 11 U.S.C. § 1325(b)(4).

[3] A debtor with annualized current monthly income below that of the median income for a family of similar size in the Debtor's state is referred to as a "Below Median Debtor".

[4] The "applicable commitment period" for a Below Median Debtor is 3 years. 11 U.S.C. § 1325(b)(4)(A). A Below Median Debtor's plan may not provide for payments over a period that is longer than 3 years, unless the court for cause approves a longer period. 11 U.S.C. § 1322(d)(2).

son, Travon M. Brinsen. The Bank of New York alleged that the note, which had an outstanding balance of $318,921.48, was secured by a first priority deed of trust lien on the Debtors' Home located at 1557 Oakland Chase Parkway in Henrico County, Virginia (the "Residential Loan"). The Bank of New York alleged further that the Debtors had failed to make post-Petition Date payments for five consecutive months on the Residential Loan and that the equity in the Home was dissipating. Debtor Tracey Brice filed a response to the relief from stay motion in which she indicated that the Debtors were trying to negotiate a loan modification agreement with the Bank of New York in connection with the Residential Loan. Ultimately the parties to the relief from stay motion were able to agree upon the terms of a loan modification (the "Loan Modification Agreement") that would allow the Debtors to keep their Home by curing the existing default under and adjusting the interest rate on the Residential Loan.[5]

After the Debtors had successfully negotiated the Loan Modification Agreement with the Bank of New York, they filed their Modified Plan on July 16, 2013. The Modified Plan was filed because the Debtors no longer had a need to fund the arrearage that had accrued on the Residential Loan prior to the Petition Date. It is to this Modified Plan that the Trustee has now objected. The Modified Plan proposes to reduce the commitment period in the Original Plan from 60 months to 36 months. The proposed distribution to the Debtors' unsecured creditors will remain the same, but the creditors can expect to receive payment sooner under the proposed Modified Plan. The Trustee objects to the reduction in the size of the commitment period[6] on the

---

[5] The Loan Modification Agreement includes debt forgiveness, principal deferral, and interest rate reduction. It remains subject to the approval of this Court.

[6] The Trustee argues that if his Objection is sustained, then the Debtors' current 5-year repayment plan will generate a 17% return to the unsecured creditors instead of 10% as originally contemplated. That is because no portion of the income stream under the Original Plan would need to be diverted to curing the arrearage under the Residential Loan given the terms of the Loan Modification Agreement.

3

grounds that no material change has occurred that would prevent the Debtor from continuing to make payments for the 5-year period for which the Original Plan currently provides.

The Debtors' cash flow appears to remain substantially unchanged as a result of the Loan Modification Agreement. The Debtors' original Schedules I and J annexed to their Petition indicate monthly income of $4,991.77 and monthly expenses of $4,715. Based on these figures, the Original Plan required the Debtors to pay $275 per month to the Trustee. As of the Petition Date, this figure represented substantially all of the Debtors' expected disposable income.[7] Over the 60 month life of the plan, the Trustee could expect to receive $16,500 from which the Trustee would then pay his commission, attorneys' fees, arrearages on the Residential Loan, and claims of the unsecured creditors.

The Debtors' Modified Plan does not appear to depart significantly from the Original Plan. Although the Debtors' monthly income has decreased slightly due to a loss of food stamps and rental income that an adult child had been contributing to the household, that loss of income has been offset by a corresponding reduction in the amount of the Debtors' monthly Residential Loan payment under the Loan Modification Agreement. As a result, the Debtors are still able to pay $275 per month to the Trustee just as they have been doing under the Original Plan. The only difference is that the plan payments will cease after 36 months. Unsecured creditors will still recover approximately 10% of the allowed amount of their unsecured claims if the Modified Plan is confirmed.

---

[7] A Chapter 13 debtor is expected to commit all of the debtor's disposable income to fund a proposed repayment plan. The term "disposable income" is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2). A debtor is required to file Official Form B22C to reflect the statutory calculation of current monthly income. *See* Fed. R. Bankr. P. 1007(b)(6). The Debtors reported current monthly income of $5,044 on their form B22C. As this figure did not exceed the median income for a family of the Debtors' size in Virginia, they were Below Median Debtors. The Bankruptcy Code is silent on the method for calculating "amounts reasonably necessary to be expended" for Below Median Debtors. 11 U.S.C.A. § 1325(b)(2).

A Chapter 13 debtor must file a payment plan, and that plan must conform to certain time constraints. 11 U.S.C. §§ 1321-22. For Below Median Debtors, the plan may not exceed three years unless the court approves a longer period of time, for cause. In no event may a plan exceed five years in duration. *Id*. at § 1322(d)(2). The Court found the salutary goal of preserving the Debtors' Home to be good cause for approving the expanded commitment period in the Debtors' Original Plan. That exigency no longer looms over the Debtors' case.

The Bankruptcy Code permits a debtor, trustee, or holder of an allowed unsecured claim to request modifications to a plan after confirmation. *Id*. at § 1329. A court may not approve a modification where there "have been no unanticipated, substantial changes in the debtor's financial situation." *In re Murphy*, 327 B.R. 760, 771 (Bankr. E.D. Va. 2005) (citing *Arnold v. Weast (In re Arnold)*, 869 F.2d 240 (4th Cir. 1989)). A change in financial condition is anticipated when, "a debtor's altered financial circumstances could have been reasonably anticipated at the time of confirmation by the parties seeking modification."[8] *Id*. The corollary to the rule in *Murphy* is that a court may approve a requested plan modification when the movant demonstrates there has been an unanticipated, substantial change in the debtor's financial condition.

The Court finds that on the Petition Date the Debtors had no way to reasonably anticipate that the Bank of New York would make the concessions it did to the Residential Loan and enter into the Loan Modification Agreement. Further, the Court finds that, for a bankruptcy estate with assets valued at $247,628.56 and liabilities exceeding $400,000, the Loan Modification

---

[8] In *Murphy*, a plan modification providing for the Chapter 13 trustee to realize the proceeds from the sale of a debtor's condominium was approved where the court found a sudden, significant appreciation in property values could not have been reasonably anticipated by the trustee. 327 B.R. at 771-73. However, the court found a more moderate increase in value over a two-year period was not so dramatic as to be unanticipated and a corresponding proposed plan modification allowing the trustee to capture the proceeds from the refinancing of a debtor's home was not approved. *Id*. at 774. The court reasoned that even if the increased value of the home was unanticipated, the refinancing did not change the debtors' overall financial condition because the debtors' net worth was unaltered when they traded home equity for a corresponding increased level of debt. *Id*.

Agreement represents a substantial change to its financial condition. The Court is satisfied that the Debtors have demonstrated an objectively unanticipated, substantial change to their financial condition that justifies their request to modify their confirmed plan under § 1329 of the Bankruptcy Code.

Nevertheless, the Court may not approve the Debtors' proposed Modified Plan in light of the Trustee's Objection, unless the Modified Plan "provides that all of the [D]ebtors' projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). The Court finds that as of the effective date of the Original Plan, the Debtors were Below Median Debtors. As such, the Debtors were eligible to file for relief under Chapter 7 of the Bankruptcy Code and discharge all of their unsecured debt. 11 U.S.C § 707(b). The Debtors chose instead to commit their projected disposable income to the repayment of a portion of that debt. The Original Plan was proposed in good faith and there were no objections filed to it.

The Court finds that the Debtors remain Below Median Debtors and that there has been no substantial change to their income or expenses that would mandate a modification to the amount of the monthly payment required by the Original Plan. The Court finds that, given the provisions of the Loan Modification Agreement, cause no longer exists that would justify a commitment period exceeding 36 months. Accordingly, the Court will not approve a modification that extends the plan beyond the three-year statutory maximum. 11 U.S.C. §§ 1322(d)(2) and 1325(b)(4)(A)(i).[9] The Court is satisfied that the Debtors' Modified Plan, just

---

[9] The Trustee's argument against reducing the length of the current five-year commitment period is disingenuous. Its logic simply proves that any longer repayment period will yield a greater return to unsecured creditors. At its extreme, the argument would suggest that there is no reason not to expand the commitment period to allow for the repayment of the unsecured claims in full. But Congress chose to mandate a maximum commitment period. If the Court were to substitute the Trustee's judgment for that of Congress, then the Debtors would simply convert their case to one under Chapter 7 (as it is their absolute right to do, *See* 11 U.S.C. § 1307(a)) where the unsecured

6

like the Debtors' Original Plan, otherwise complies with all of the requirements set forth in 11 U.S.C. § 1325(b)(1)(B). Accordingly, the Trustee's Objection will be overruled and the Debtors' Modified Plan will be confirmed.

A separate order shall issue.

ENTERED: _____

       /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

---

creditors would not fair as well as under the proposed Modified Plan. The Court will not compel the Debtors to exceed the statutorily prescribed maximum commitment period.